**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION**

| | | |
|---|---|---|
| **JAMES OAKS and** | ) | |
| **JULIE DEANN OAKS,** | ) | |
| | ) | |
|    **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 3:21-cv-00541** |
| | ) | **Judge Aleta A. Trauger** |
| **LARGO BIOSCIENCE, INC. and** | ) | |
| **SCOTT McFARLAND,** | ) | |
| | ) | |
|    **Defendants.** | ) | |

## MEMORANDUM

Before the court is the Motion to Dismiss for Lack of Personal Jurisdiction (Doc. No. 17) filed by defendants Largo Bioscience, Inc. ("Largo") and its Chief Executive Officer, Scott McFarland. For the reasons set forth herein, the court will grant the motion and dismiss this case without prejudice.

## I.    FACTUAL ALLEGATIONS AND PROCEDURAL HISTORY

Plaintiffs James Oaks and Julie Oaks, husband and wife, are residents and citizens of Williamson County, Tennessee. Defendant Largo is a Florida corporation with its principal place of business in Largo, Florida. McFarland is domiciled in Olney, Maryland. (Compl., Doc. No. 1 ¶¶ 1–3.)

In their Complaint, the plaintiffs allege, generally, that Largo manufactures and sells a product, "Lyme-N," "throughout the United States," including in Tennessee, "as well as online, as a safe and effective product for the treatment of certain medical conditions." (*Id.* ¶ 12.) On June 22, 2020, James Oaks contacted Largo to obtain information about using Lyme-N to treat his medical condition. (*Id.* ¶ 14.) McFarland, acting on behalf of Largo, advised Oaks to purchase

Lyme-N. The plaintiffs allege that, pursuant to that advice, Oaks purchased Lyme-N. (*Id.* ¶¶ 15, 17.) On July 20, 2020, Oaks requested additional information from the defendants about how to use the product. He received a response from the defendants advising him how to use it. (*Id.* ¶ 18.) He used the product in accordance with the instructions received from the defendants during the period July 20 through August 9, 2020. (*Id.* ¶ 19.)

However, rather than ameliorating Oaks' underlying medical condition, Lyme-N allegedly exacerbated it substantially. The plaintiffs claim that Oaks experienced severe side effects from Lyme-N, resulting in hospitalization and surgery. Oaks brings a product liability claim against Largo under Tennessee law, a claim against McFarland for the unauthorized practice of medicine, and a claim against Largo for its vicarious liability for McFarland's unauthorized practice of medicine. Plaintiff Julie Oaks brings a claim based on loss of consortium.

Rather than answering the Complaint, the defendants filed a Motion to Dismiss under Rule 12(b)(2), asserting that the court lacks personal jurisdiction over either defendant. (Doc. No. 17.) In support of their motion, the defendants rely on the Declaration of Scott McFarland, in which McFarland avers that he himself has never owned real or personal property in Tennessee; has never been domiciled in Tennessee; has never established an office or maintained a place of business in Tennessee; and has never made business trips, attended conferences, or otherwise hosted or attended corporate events in Tennessee. (McFarland Decl., Doc. No. 17-2 ¶ 7(a)–(d).) He states that the only contact he has had with the state of Tennessee was "with Plaintiff James Oaks after he reached out and contacted Largo." (*Id.* ¶ 7(e).) Concerning Largo, McFarland states that, prior to James Oaks' contacting it, Largo had never made any shipments into Tennessee and had never been in contact with anyone in Tennessee. (*Id.* ¶ 8(a)–(b).) In addition, Largo has never maintained an office in Tennessee or owned real or personal property in Tennessee, and it is not registered to

do business in Tennessee. It has never maintained an office in Tennessee, marketed itself or its products in Tennessee, or conducted or participated in business conferences in Tennessee. (*Id.* ¶ 8(c)–(f).)

The plaintiffs filed a Response in Opposition to the Motion to Dismiss and the Affidavit of James Oaks. (Doc. Nos. 26, 26-1.) Oaks' Affidavit clarifies some of the allegations in the Complaint and conflicts with others. Oaks avers that he is a physician and that he first heard about Lyme-N in 2019 from another physician, who recommended that he "investigate whether it might help" relieve the "mild" symptoms Mr. Oaks was experiencing. (James Oak Aff., Doc. No. 26-1 ¶¶ 4, 5.) Oaks searched for the product online and located Largo's website: https://www.lyme-n.com/about-lyme-n/. (*Id.* ¶ 6.) Oaks avers that Largo "markets and sells [Lyme-N] through this website to practitioners that initially use the website to sign up and then the practitioners retail it to their patients." (*Id.* ¶ 7.) He claims that the website is "interactive," insofar as it "enables persons to ask questions on the web page and receive answers from [Largo's] personnel." (*Id.* ¶ 8.) He himself used the website "to ask for and receive information about Lyme-N." (*Id.* ¶ 9.) Oaks had "additional questions and was able to speak" with Scott McFarland by telephone on two separate occasions. (*Id.* ¶ 10.)

In these telephone conversations, James Oaks informed McFarland that he was a physician in Tennessee. McFarland offered to send Oaks a bottle of Lyme-N "as part of a program that Largo utilizes to get practitioners to recommend it to patients. The first bottle was complimentary." (*Id.* ¶¶ 11–12.) Oaks placed his order for this complimentary bottle over the phone, apparently through McFarland, and Largo shipped it to him at his home in Tennessee. (*Id.* ¶¶ 13–14.) Oaks alleges that, after he had already used the product, he "spoke[] to other persons in Tennessee who informed [him] that they too utilized Lyme-N." (*Id.* ¶ 16.)

With their Reply (Doc. No. 28), the defendants filed the Supplemental Declaration of Scott McFarland (Doc. No. 28-1). The defendants point out that James Oaks, contrary to the allegation in the Complaint, now states that he did not actually purchase a bottle of Lyme-N (Doc. No. 28, at 2), and McFarland avers that "Largo has never conducted any for profit business in Tennessee" (Doc. No. 28-1 ¶ 6). He further states that no individuals, practitioners, or known users who live in Tennessee have registered on Largo's website; Oaks was never given access to the distributor login on Largo's Lyme-N website; and the Lyme-N website does not allow for individuals to order any products directly from the website, nor does it allow individuals to create accounts without Largo's express authorization and the issuance of account credentials and passwords. (*Id.* ¶¶ 7–10.) Although the plaintiffs characterize Largo's website as "interactive," McFarland states that it actually "only contains very basic information about Lyme-N, and it requires that any additional requests, orders, or issues be handled outside of the website." (*Id.* ¶ 11.)

## II.    LEGAL STANDARDS

Rule 12(b)(2) of the Federal Rules of Civil Procedure authorizes a defendant to file a motion to dismiss for lack of personal jurisdiction. Although the defendant is the moving party on such a motion, the plaintiff, as the party who invokes the court's jurisdiction, bears the burden of making a *prima facie* showing of personal jurisdiction. *Intera Corp. v. Henderson*, 428 F.3d 605, 615 (6th Cir. 2005). Where, as here, neither party has requested an evidentiary hearing, the plaintiff's burden is "relatively slight." *MAG IAS Holdings, Inc. v. Schmückle*, 854 F.3d 894, 899 (6th Cir. 2017). "To defeat dismissal in this context, [the plaintiff] need make only a *prima facie* showing that personal jurisdiction exists." *Id.* To determine whether the plaintiff has made such a showing, the court considers the pleadings and any affidavits submitted by the parties in the light most favorable to the plaintiff. Any conflicts between facts contained in the parties' affidavits must be resolved in the plaintiff's favor. *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 887

(6th Cir. 2002). Dismissal under Rule 12(b)(2) is appropriate only if the specific facts alleged by plaintiff, taken as a whole, fail to state a *prima facie* case for personal jurisdiction. *Bridgeport Music, Inc. v. Still N The Water Pub.*, 327 F.3d 472, 478 (6th Cir. 2003).

A defendant may be subject to either general jurisdiction or specific jurisdiction. General jurisdiction means that a court can hear any and all claims against a defendant, based on its pervasive, continuous and systematic affiliations with the forum state. *Daimler AG v. Bauman*, 571 U.S. 117, 122 (2014); *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011). The plaintiffs do not assert personal jurisdiction based on general jurisdiction; the question is whether the court may exercise specific jurisdiction.

A federal district court sitting in diversity must apply the law of the forum state to determine whether it may exercise jurisdiction over the person of a non-resident defendant, to the extent state law is consistent with due process. *Theunissen v. Matthews*, 935 F.2d 1454, 1459 (6th Cir. 1991) (citations omitted). Tennessee's long-arm statute, Tenn. Code Ann. § 20-2-214, provides that nonresidents of the state are subject to the jurisdiction of the courts of this state "as to any action or claim for relief arising from," among other acts, " [t]he transaction of any business within this state"; "[a]ny tortious act or omission within this state"; "[e]ntering into a contract for services to be rendered or for materials to be furnished in this state"; and any other "basis not inconsistent with the constitution of this state or of the United States." Tenn. Code Ann. § 20-2-214(a)(1), (2), (5), (6). The jurisdictional limits of the Tennessee long-arm statute have long been interpreted to be identical to the federal constitutional requirement of due process. *S. Mach. Co. v. Mohasco Indus., Inc.*, 401 F.2d 374, 377 (6th Cir. 1968); *Crouch Ry. Consulting, LLC v. LS Energy Fabrication, LLC*, 610 S.W.3d 460, 471 (Tenn. 2020) (citations omitted).

Under federal law, for purposes of determining whether a district court's exercise of

personal jurisdiction would offend due process, "[t]he relevant inquiry is whether the facts of the case demonstrate that the non-resident defendant possesses such minimum contacts with the forum state that the exercise of jurisdiction would comport with 'traditional notions of fair play and substantial justice.'" *Theunissen v. Matthews*, 935 F.2d 1454, 1459 (6th Cir. 1991) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). The Supreme Court recently described the parameters of specific jurisdiction, as follows:

> Specific jurisdiction . . . covers defendants less intimately connected with a State, but only as to a narrower class of claims. The contacts needed for this kind of jurisdiction often go by the name "purposeful availment." The defendant . . . must take some act by which [it] purposefully avails itself of the privilege of conducting activities within the forum State. The contacts must be the defendant's own choice and not random, isolated, or fortuitous. They must show that the defendant deliberately reached out beyond its home—by, for example, exploi[ting] a market in the forum State or entering a contractual relationship centered there. Yet even then—because the defendant is not "at home"—the forum State may exercise jurisdiction in only certain cases. The plaintiff's claims, we have often stated, must arise out of or relate to the defendant's contacts with the forum. Or put just a bit differently, there must be an affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation.

*Ford Motor Co. v. Mont. Eighth Judicial District Court*, 141 S. Ct. 1017, 1024–25 (2021) (internal quotation marks and citations omitted).[1]

## III.    ANALYSIS

Under *Ford Motor*, to survive the defendants' Motion to Dismiss, the plaintiffs must make

---

[1] The Sixth Circuit has articulated a similar test to "guide" the determination of whether specific jurisdiction exists:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*Beydoun v. Wataniya Rests. Holding, Q.S.C.*, 768 F.3d 499, 505 (6th Cir. 2014) (quoting *S. Mach. Co. v. Mohasco Indus., Inc.*, 401 F.2d 374, 381 (6th Cir. 1968)).

out a *prima facie* showing both (1) that the defendants purposefully availed themselves of the privilege of conducting business in Tennessee and (2) that the plaintiff's claims "arise out of or relate to the defendant[s'] contacts" with Tennessee. *Id.* Here, finding that the plaintiffs cannot establish purposeful availment, the court does not reach the question of whether there is "an affiliation between the forum and the underlying controversy." *Id.* at 1025.

### A.    Purposeful Availment

Viewed in the light most favorable to the plaintiffs, the facts outlined above establish that James Oaks reached out to Largo in some fashion through Largo's website and received some additional information from Largo in response to questions. He spoke on the telephone with Scott McFarland on two occasions, during which McFarland advised him to try Lyme-N and offered to send him a free bottle. Largo shipped to James Oaks in Tennessee one complimentary bottle of Lyme-N. The defendants assert that they do not have a marketing presence in Tennessee and have not knowingly sold any of their product in Tennessee. They argue that their contacts with Tennessee—which consist of shipping a single bottle of Lyme-N after two telephone calls with James Oaks, which were initiated by Oaks—are too attenuated to show that it purposefully availed itself of the privilege of acting or causing a consequence in Tennessee. They also argue that the exercise of jurisdiction over them in this state would not comport with "traditional notions of fair play and substantial justice." (Doc. No. 17-1, at 6 (quoting *International Shoe v. Washington,* 326 U.S. 310, 320 (1945)).)

In an effort to beef up these essential facts, the plaintiffs insist that the defendants "advertised in Tennessee through their interactive website." (Doc. No. 26, at 5.) They emphasize that the defendants knew that Oaks was a Tennessee resident when he spoke with McFarland; that Largo knowingly shipped Lyme-N to him in Tennessee; and that Lyme-N was sent to Oaks in Tennessee as part of Largo's "marketing plan to encourage James Oaks, who is a licensed

physician, to recommend the use of Lyme-N to his Tennessee patients." (Doc. No. 26, at 5, 7.) The plaintiffs also assert that the fact that Oaks heard about Lyme-N from another Tennessee resident and has since spoken to other individuals in Tennessee who have taken Lyme-N gives rise to a reasonable inference that the defendants have made other shipments to Tennessee. (*Id.* at 8.) They argue, further, that courts have found the existence of specific jurisdiction based on a single transaction. (*Id.* at 7–9 (citing *McGee v. Int'l Life Ins. Co.*, 355 U.S. 220 (1957); *Illinois v. Hemi Group, LLC*, 622 F.3d 754 (7th Cir. 2010); *Berry v. Beech Aircraft Corp.*, 818 F.2d 370, 374 (5th Cir. 1987); *Masada Inv. Corp. v. Allen*, 697 S.W.2d 332, 334 (Tenn. 1985)).) They insist that the applicable test has "always focused on the 'nature and quality' of the contacts with the forum and not the quantity of those contacts." (*Id.* at 9–10 (quoting *Int'l Shoe*, 326 U.S. at 320; citing *CompuServe v. Patterson*, 89 F.3d 1257 (6th. Cir. 1996)).)

The court notes, as an initial matter, that there are no factual disputes presented by the parties' evidentiary submissions. Although the plaintiffs claim that Oaks' conversations with others in Tennessee who have taken Lyme-N give rise to a reasonable inference that Largo sold the product to other Tennessee residents, they have provided no actual evidence other than their speculation that these other unnamed and unnumbered Tennessee residents purchased Lyme-N in Tennessee, as opposed to receiving it at an out-of-state conference or from a friend. Any such possible inference, accordingly, cannot stand up to McFarland's affirmative declaration that Largo never sold or shipped Lyme-N to any Tennessee resident other than Oaks.

Second, although the plaintiffs insist that Largo's website is "interactive," they do not actually explain what they mean by that. It seems the website may have the capacity to be fully interactive for customers who become distributors and are granted access with log-in credentials and a password, but James Oaks was never granted that access. Moreover, the evidence is clear

that James Oaks did not actually purchase or order any product from the website and, according to McFarland, could not have done so. Instead, although Oaks' testimony is vague regarding his actual interaction with the website, he states in his Affidavit that he used the website to "ask for and receive information about Lyme-N." (Doc. No. 26-1 ¶ 9.) He had "additional questions and was able to speak" on the telephone with McFarland on two occasions. (*Id.* ¶ 10.) The telephone calls, in other words, were initiated by him or came about because of his inquiries.

Third, despite the plaintiffs' contention that Oaks was on a path to a distribution agreement, he did not, in fact, have a contract or an agreement with the defendants. And, not only did Oaks have no access to the features available only to subscribers, Largo has no subscribers or distributors in Tennessee.

The plaintiffs insist that the defendants' use of an "interactive website to market their product and communicat[e] with Plaintiff James Oaks knowing him to be in Tennessee is itself sufficient to constitute the conscious doing of business with the State of Tennessee," for purposes of satisfying the "purposeful availment" prong of the test for specific jurisdiction. (Doc. No. 26, at 5–6 (citing *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 891 (6th Cir. 2002)).) In addition to *Neogen*, the plaintiffs cite a number of other cases for the proposition that the use of an "interactive" website and knowledge of the plaintiff's state of residence is sufficient to establish purposeful availment. However, none of the cases cited by the plaintiffs is remotely similar to this case, and all of them involve substantially more contacts between the defendant and the forum state.

In *Neogen*, for example, a trademark infringement case, the defendant, NGS, performed diagnostic testing on blood samples sent to its place of business in Pennsylvania. NGS advertised through its website, which provided information about its services and allowed prospective

customers from around the country to print collection forms to be mailed, along with blood samples, to NGS in Pittsburgh. *Neogen*, 282 F.3d at 886–87. NGS engaged in fourteen mail-order transactions with residents of the forum state, Michigan, the year before the plaintiff filed suit, and it anticipated a similar number the following year. *Id.* at 887. The Sixth Circuit concluded that, while "maintenance of NGS's website, in and of itself, [did] not constitute[] purposeful availment" and the website was primarily passive, insofar as it simply "advertise[d] NGS's services and provide[d] basic contact information," "several aspects of the website" nonetheless supported a finding of purposeful availment. *Id.* at 890. Specifically, when Michigan residents purchased NGS's services, NGS provided them with passwords to access their test results on the website from Michigan. The court noted that "[t]he granting of passwords to Michigan residents as part of a contract for NGS's services is an interactive usage showing that NGS has intentionally reached out to Michigan customers and enabled them to use NGS's services from Michigan." *Id.* at 890–91. Another aspect of the website was the fact that NGS held itself out as welcoming business from Michigan—the website stated the company would do genetic screening tests for any parent in any state and included a chart showing data with a geographical breakdown that included Michigan. *Id.* at 890–91.

None of these aspects is present here. Although Largo's website may have permitted authorized users to submit orders and have product shipped to them, once Largo issued them passwords and login authorization, neither James Oaks nor any other Tennessee resident was granted such access. Instead, Largo's website passively offered information about Largo's products and allowed Oaks to request additional information. Although McFarland expressed willingness to ship product to Oaks, the website did not specifically hold itself out as welcoming Tennessee residents. And, while NGS had engaged in at least fourteen transactions with Michigan

residents in one year and anticipated a similar number the following year (and also had an undisclosed number of transactions with Michigan residents in the preceding years), the defendants here shipped a single bottle of their product to Tennessee, after being contacted by James Oaks. *Neogen* does not support a finding that the court may exercise personal jurisdiction in this case.

In *Illinois v. Hemi Group, LLC*, 622 F.3d 754 (7th Cir. 2010), also cited by the plaintiffs, the Seventh Circuit found that the defendant's sale of discount cigarettes "through its many websites" from its base in New Mexico to customers in Illinois "sufficed to establish personal jurisdiction over [the defendant] in Illinois." *Id.* at 755. The court's decision was based, in large part, on the defendant's maintenance of "commercial websites through which customers could purchase cigarettes, calculate their shipping charges using their zip codes, and create accounts." *Id.* at 757–58. In addition, the websites specifically stated that the company would "ship to any state in the country except New York." *Id.* at 758. The court found this statement significant, insofar as it signaled both the defendant's knowledge that doing business with residents of a particular state "could subject it to jurisdiction there and also that it knew how to protect itself" from that eventuality. *Id.* The statement also signaled a willingness to do business with Illinois residents—and the evidence further established that it did, in fact, do business with Illinois residents. *Id.* Again, these contacts are not remotely similar to those of the Oaks' case, and the holding in that case does not support a finding of personal jurisdiction here.

More recently, the Seventh Circuit reaffirmed and expanded upon its decision in *Hemi*. In *Curry v. Revolution Laboratories, LLC*, 949 F.3d 385 (7th Cir. 2020), another case on which the plaintiffs rely, one seller of dietary supplements brought suit against another for trademark dilution and other claims. The defendant argued that it was not subject to personal jurisdiction in Illinois. Although it had admittedly made at least 767 sales of its product to consumers in Illinois, *id.* at

390, it argued that this minimal figure—making up only 1.8% of its total gross sales nationwide—was not sufficient to support personal jurisdiction. The Seventh Circuit, citing *Hemi*, was not persuaded:

> Like Hemi, Revolution sells its products only online through its website and third-party websites. Revolution's interactive website for the sale of its products requires the customer to select a shipping address. Illinois is among the 'ship-to' options from which the customer must choose. Illinois residents purchasing Revolution's products also receive an email from Revolution thanking them for their business, confirming their order, and listing the Illinois shipping address.

*Id.* at 399. The court found, based on these facts, that the defendant's "own actions in establishing these commercial contacts with Illinois fairly can be described as purposeful." *Id.* In addition, the defendant further arranged for the sale of product to Illinois residents through third-party websites, sent written confirmation of sales, and shipped products to Illinois. The court observed that, while caution was "appropriate when assessing a defendant's online contacts with a forum 'to ensure that a defendant is not haled into court simply because the defendant owns or operates a website that is accessible in the forum state,'" *id.* at 400 (quoting *Hemi*, 622 F.3d at 760), the 767 sales the defendants had indisputably made to Illinois residents "provide[d] solid evidence that [the defendants] [had] purposely exploited the Illinois market" and distinguished the defendants' business from one that "merely operates a website, even a 'highly interactive' website, that is accessible from, but does not target, the forum state." *Id.* (internal quotation marks and citations omitted).

Again, this factual scenario is not remotely similar to the one in this case and, instead, more closely resembles the type of business the Seventh Circuit distinguished from that at issue in *Curry*: the defendants here operate a website that is accessible from, but does not target, Tennessee. While it may be highly interactive for users with authorization, it is not "highly interactive" for non-registered users such as Oaks. In fact, there is no evidence that Oaks would have been able to

purchase Lyme-N directly from the website. Moreover, the evidence further establishes that the defendants have not *sold* a single bottle of their product to a Tennessee resident. Rather, after being contacted by a Tennessee resident physician, they shipped a single complimentary bottle of Lyme-N to Tennessee. McFarland may have hoped to enter into a business relationship with a Tennessee resident, but one never transpired. There is, in sum, no "solid evidence" that the defendants "purposely exploited the [Tennessee] market," *id.*, as required to satisfy the "purposeful availment" prong of the personal jurisdiction test.

The other cases cited by the plaintiffs are similarly inapplicable. *See, e.g.*, *McGee v. Int'l Life Ins. Co.*, 355 U.S. 220, 223 (1957) (finding that the defendant's sale of a single life insurance policy to a California resident was sufficient to justify the exercise of personal jurisdiction over it in that state, stating: "It is sufficient for purposes of due process that the suit was based on a contract which had substantial connection with that State," given that "[t]he contract was delivered in California, the premiums were mailed from there"—over a period of two years—"and the insured was a resident of that State when he died"); *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1263 (6th Cir. 1996) (finding personal jurisdiction over the out-of-state defendant who, among other things, entered into an ongoing contract with a resident of the forum state and purposefully and repeatedly, over the course of several years, sent computer files over the internet to the forum state for sale and distribution); *Bird v. Parsons*, 289 F.3d 865, 874 (6th Cir. 2002) ("We conclude that by maintaining a website on which Ohio residents can register domain names and by allegedly accepting the business of 4,666 Ohio residents, the Dotster defendants have satisfied the purposeful-availment requirement."); *Zippo Mfg. Co. v. Zippo Dot Com, Inc.,* 952 F. Supp. 1119, 1126 (W.D. Pa. 1997) (finding that the defendant purposefully availed itself of the privilege of doing business in Pennsylvania where it had 3,000 subscribers in Pennsylvania and seven separate

contracts with internet service providers to provide services to its Pennsylvania-based customers, and it was not simply advertising its services on the internet but was "in fact engaged in transactions over its interactive website," as evidenced by its "repeatedly and consciously" processing Pennsylvania residents' applications and assigning them passwords through its website); *Masada Inv. Corp. v. Allen*, 697 S.W.2d 332, 333–35 (Tenn. 1985) (finding the exercise of jurisdiction over an out-of-state attorney to be consistent with due process, where the attorney had prepared legal documents relating to the purchase of real estate in Tennessee, including the "warranty deed and the agreement of sale and purchase for the property," and he "did not merely record what [the purchaser] instructed him to, but took independent action in fulfilling his obligations," including speaking on the phone with the seller's attorney in Knoxville several times, drafting the documents to be in accord with Tennessee law, sending the completed documents into Tennessee for execution, and then holding these same documents until closing in his office," all while knowing that "his legal work would control the sale of several million dollars of Tennessee realty which was being sold by a Tennessee limited partnership subject to the laws of Tennessee").

As more relevant here, the Sixth Circuit has long held that the mere fact that a defendant has a contract with a resident of the forum state is insufficient in itself to demonstrate purposeful availment. *See, e.g.*, *Calphalon Corp. v. Rowlette*, 228 F.3d 718, 722–23 (6th Cir. 2000). Rather, in determining whether the presence of a contractual and business relationship indicates purposeful availment, courts are to consider "prior negotiations and contemplated future consequences, along with the terms of the contract and parties' actual course of dealing." *Id.* (internal quotation omitted). Indeed, it is the manner in which a contract is negotiated and performed and the quality of the contact with the forum state, rather than the mere quantity of contacts or the duration of the relationship, that is relevant to the purposeful availment inquiry. *See id.* (holding that, while the

defendant had phone, fax, e-mail, and in-person contacts with the forum, it "had contact with the state only because the plaintiff chose to reside there" and made no effort to "further its business and create continuous and substantial consequences in the state"). Based on these principals, the Sixth Circuit and the district courts within the Sixth Circuit have generally found that isolated sales to a forum, through an interactive website or otherwise, will not satisfy the purposeful availment requirement. *See, e.g.*, *Kerry Steel, Inc. v. Paragon Indus., Inc.*, 106 F.3d 147, 151 (6th Cir. 1997) (finding no personal jurisdiction over the defendant in Michigan based on a single sale, where the defendant had "no employees or offices in Michigan," the plaintiff reached out to the defendant to initiate the purchase, and the defendant "responded without leaving home"); *Fruit of the Loom, Inc. v. En Garde, LLC*, No. 1:17-CV-00112-GNS-HBB, 2017 WL 3671322, at *4 (W.D. Ky. Aug. 25, 2017) (finding that the isolated sale of a single t-shirt to Kentucky through the defendant's arguably interactive website was insufficient to establish its purposeful availment of the privilege of conducting business in Kentucky, where there was no evidence that the website was "interactive to a degree that reveals specifically intended interaction with residents of [Kentucky]" or evidence of any other interactions with Kentucky residents (quoting *Neogen*, 292 F.3d at 890)); *Advanced Solutions Life Scis., LLC v. BioBots, Inc.*, No. 3:16-CV-00709-CRS, 2017 WL 2114969, at *6 (W.D. Ky. May 15, 2017) (recognizing that "as little as a single transaction can establish purposeful availment," but holding that the defendant's sales of its product to two Kentucky residents who had reached out to the defendant to initiate the sales were insufficient to establish purposeful availment); *Roberts v. Paulin*, No. 07-CV-13207, 2007 WL 3203969, at *6 (E.D. Mich. Oct. 31, 2007) (finding that the defendant was not subject to personal jurisdiction in Michigan, despite hosting an "interactive website that allows a user to exchange information with the host computer, mainly to place an order for the purchase of a product" and despite having made a few

sales in Michigan, where there was no evidence that the defendant "directed her activity towards Michigan or otherwise had sufficient contacts with Michigan").

It seems clear, based on the above-referenced opinions, that, if James Oaks and Scott McFarland had engaged in additional conversations about Oaks' becoming a distributor of Lyme-N to his patients in Tennessee and had gotten so far in their discussions that Oaks was granted authorization to order the product from Largo's website and actually placed and received shipment of such an order, this degree of contact would likely have been sufficient to establish the defendants' purposeful availment of the privilege of conducting business in Tennessee. That is not what happened, however. Instead, James Oaks found Largo's website and reached out to Largo for information. McFarland spoke with him on the telephone, offered to send him a complimentary bottle, and shipped one bottle of Lyme-N to Tennessee. These minimal interactions do not satisfy the purposeful availment prong of the test for personal jurisdiction.

Because purposeful availment is "the *sine qua non* of *in personam* jurisdiction," *Theunissen v. Matthews*, 935 F.2d 1454, 1460 (6th Cir. 1991) (quoting *S. Mach. Co. v. Mohasco Indus.*, 401 F.2d 374, 380 (6th Cir. 1968)), the court will grant the defendants' motion without reaching the other factors relevant to the exercise of personal jurisdiction.

## IV. CONCLUSION

For the reasons set forth herein, the court will grant the defendants' motion and dismiss this case without prejudice. An appropriate Order is filed herewith.

ALETA A. TRAUGER
United States District Judge